IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ali Naeem Al-Zaidy,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.<br><br>    Respondents. | No. CV-09-1440-PHX-JAT (LOA)<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus by Person in State Custody Pursuant to 28 U.S.C. § 2254. (docket # 1) Respondents have filed an Answer to which Petitioner has replied. (dockets # 11, 12) For the reasons set forth below, the Petition should be dismissed as untimely. *See* 28 U.S.C. § 2244(d).

**I. Factual and Procedural Background**

    **A. Charges, Trial, and Sentencing**

Petitioner and the victim were involved in a romantic relationship until 1997. (Respondents' Exh. U at 5) In mid-July of 1998, the victim went to the home of a mutual friend. (Respondents' Exh. U at 6) When she arrived, the victim was surprised that Petitioner was there. (Respondents' Exh. U at 7) The victim told Petitioner that she was now married and that Petitioner should not call her or contact her anymore. (Respondents' Exh. U at 9-10)

On July 21, 1998, the victim was driving and had some trouble with the clutch of her car "slipping." (Respondents' Exh. U at 11) She pulled over to the side of the road to

investigate. (Respondents' Exh. U at 11)  Petitioner appeared and, without invitation, entered the passenger side of the car and told the victim to drive. (Respondents' Exh. U at 11-12)  As the victim drove toward the freeway, Petitioner brandished a butcher knife and told the victim he was going to kill her. (Respondents' Exh. U at 12-14)  Petitioner then instructed the victim to exit the freeway and take back roads. (Respondents' Exh. U at 14-15)  The victim told Petitioner that the problem with the clutch was worsening and that she had to pull into a gas station to try to fix it. (Respondents' Exh. U at 16-17)  When the victim stopped at a gas station, Petitioner dragged her out the car and tried to move her away from the car.  The victim resisted and Petitioner started stabbing her with the butcher knife. (Respondents' Exh. U at 20)  Petitioner continued stabbing the victim until witnesses threw milk crates at him. (Respondents' Exh. U at 20-24, 60; Exh. W at 15)  Petitioner fled on foot and was followed by a witness in a car.  Police apprehended Petitioner a short time later. (Respondents' Exh. V at 9, Exh. X at 17, 20-24)

On July 30, 1998, a Maricopa County Grand Jury returned an indictment charging Petitioner with attempted second degree murder, a class 2 dangerous felony. (Respondents' Exh. A)  The State subsequently alleged that Petitioner had two prior felony convictions and was on probation on the date of the offense. (Respondents' Exhs. B, C)  The matter proceeded to a jury trial[1] and Petitioner was convicted as charged on December 3, 1998. (Respondents' Exh. D at 3)

After the verdict was entered, the trial court admitted certified copies of Petitioner's prior felony convictions, took judicial notice of the court's own file, and heard testimony from a victim's advocate. (Respondents' Exh. Y at 4-7)  Based on this evidence, the court found "beyond a reasonable doubt" that Petitioner had two prior felony convictions. (Respondents' Exh. Y at 7)  The trial court further found that Petitioner was on probation when he stabbed the victim. (Respondents' Exh. Y at 8)

---

[1] The Honorable Thomas Dunevant, III presided.

- 2 -

On April 9, 1999, the court sentenced Petitioner to 35 years imprisonment, an "exceptionally aggravated" sentence for a class 2 felony with two prior felony convictions, committed while on probation.[2] (Respondents' Exh. E at 41) The trial court noted that Petitioner's two prior convictions were for offenses against the same victim as his attempted second degree murder conviction, and, at the time of his sentencing for those convictions, he was ordered to have no contact with the victim. (docket # 1, Exh. A) The trial court also found the existence of statutory and non-statutory aggravating factors including: (1) the victim suffered severe emotional and physical injuries, some of a permanent nature; (2) had witnesses not intervened, Petitioner likely would have killed the victim; (3) Petitioner expressed no remorse; (4) Petitioner had violated the trust of the court, the victim, and society; (5) the crime was especially cruel; (6) Petitioner has an obsession with the victim, demonstrated a high likelihood to re-offend, and was an extreme danger to the victim; and (7) Petitioner's previous jail term had not served as a deterrent to future conduct. (docket # 1 at 15-18)

**B. Direct Appeal**

On April 15, 1999, Petitioner filed a timely notice of appeal. (Respondents' Exh. F) On November 3, 1999, Petitioner's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), noting that he "found no arguable question of law that is not frivolous." (Respondents' Exh. G at 4) Counsel stated that he had consulted Petitioner regarding issues for appeal, but that Petitioner had not identified any such issues. (Respondents' Exh. G at 4) Counsel requested that the appellate court allow Petitioner to file a *pro per* supplemental brief. The court granted Petitioner 30 days to file a *pro per* petition for review, but he never did so. (Respondents' Exh. H)

On February 29, 2000, the Arizona Court of Appeals issued a memorandum decision stating, "[w]e have read and considered counsel's brief and have searched the entire record

---

[2] Petitioner was sentenced pursuant to the sentencing range for a class 2 non-dangerous felony with two prior felony convictions, rather than pursuant to the sentencing range for a class 2 dangerous felony. (Respondents' Exh. E at 41)

- 3 -

for reversible error . . . We find none." (Respondents' Exh. H at 4)  On April 10, 2000, the Court of Appeals issues an Order and Mandate, noting that "[t]he time for the filing of a motion for reconsideration or petition for review has expired and no motion or petition was filed." (Respondents' Exh. I)

**C.  First Post-Conviction Proceeding**

Petitioner filed a notice of post-conviction relief pursuant to Ariz.R.Crim.P. 32.  On November 12, 1999, Petitioner's counsel filed a Notice of Completion of Post-Conviction Review stating that counsel was "unable to find any claims for relief to raise in post-conviction relief proceedings," and requesting additional time for Petitioner to file a *pro per* petition. (Respondents' Exh. J at 1-2)

On or about February 28, 2000, Petitioner filed a petition for post-conviction relief. (Respondents' Exh. K)  Petitioner argued that: (1) trial counsel was ineffective for failing to argue that the trial court lacked personal jurisdiction over Petitioner; and (2) Petitioner's sentence was cruel and disproportionate to the sentence he claimed he would have received if he had been convicted of second degree murder, instead of attempted second degree murder.  (Respondents' Exh. K at 2-3)

The State filed a response arguing that, because Petitioner had failed to raise claims of lack of personal jurisdiction or disproportionate sentence on appeal, he waived those claims.  (Respondents' Exh. M at 2-3)   The State alternatively argued that Petitioner's claims lacked merit.  (Respondents' Exh. M at 2-4)  On May 26, 2000, the court dismissed the petition.  (Respondents' Exh. N)  Petitioner did not seek review in the Arizona Court of Appeals.

**D.  Second Post-Conviction Proceeding**

Over seven years later, on August 13, 2007, Petitioner filed a second notice of post-conviction relief.  (Respondents' Exh. O)  In his notice of relief, Petitioner argued that his constitutional rights had been violated because the trial court, as opposed to a jury, had determined the aggravating factors to support his sentence.  (Respondents' Exh. O at 3) Petitioner also referred to "cruel and unusual punishment violations."  (Respondents' Exh.

O) Petitioner further claimed that his notice of post-conviction relief was not untimely because there had been a significant change in the law. (Respondents' Exh. O at 3)

On September 20, 2007, the trial court dismissed the second *notice* of post-conviction relief as untimely finding that:

> Defendant claims there has been a significant change in the law that would probably change his sentence. Specifically, Defendant contends that the court violated his right to a jury determination of aggravating factors. *Blakely v. Washington*, 542 U.S. 296 (2004) addressed a defendant's right to a jury determination of aggravating factors supporting an aggravated sentence. *Blakely* does not apply retroactively to convictions that are final. *State v. Febles*, 210 Ariz. 589, 115 P.3d 629 (App. 2005), *review denied*. A conviction becomes final upon the issuance of the mandate affirming the conviction on direct appeal and the expiration of the time for seeking certiorari in the United States Supreme Court, or when the time for appeal has passed. *State v. Towery*, 204 Ariz. 386, 64 P.3d 828 (2003). The mandate was issued on April 11, 2000. Defendant's conviction is therefore final and he is not entitled to relief under Rule 32.1(g).

(Respondents' Exh. P at 1) The trial court further found that Petitioner's claims, including his claims that his sentence violated due process and was cruel and unusual, were untimely and were precluded because his claims were never raised on appeal, or in the prior Rule 32 proceeding. (Respondents' Exh. P. at 1-2)

On October 17, 2007, Petitioner's *pro per* petition for post-conviction relief was filed. (Respondents' Exh. Q) The petition was signed and dated August 6, 2007, and there is no information in the record regarding why the petition was not filed until October 2007. In the petition, Petitioner raised essentially the same arguments as in his notice — that Arizona's sentencing scheme as applied in his case and his sentence were unconstitutional because the judge found the aggravating factors. (Respondents' Exh. Q at 6-9) Petitioner also asserted that the criminal law practitioners should have known that his sentence was unconstitutional. (Respondents' Exh. Q at 8) Petitioner also argued that his 35-year sentence was cruel and unusual. (Respondents' Exh. Q at 9) On October 16, 2007, the trial

court denied Petitioner's petition for the same reasons stated in the September 20, 2007 minute entry.[3] (Respondents' Exh. R)

**E. Habeas Corpus Petition**

On July 9, 2009, Petitioner filed the pending Petition for Writ of Habeas Corpus raising the following claims:

> 1. The trial court violated Petitioner's Sixth Amendment right to a trial by jury when the judge, not a jury, found the existence of aggravating factors.
>
> 2. Arizona's sentencing statutes in effect at the time of his sentencing, which permitted the judge to find aggravating factors by a preponderance of the evidence, violated his Sixth Amendment rights.

(docket # 1) Respondents assert that the Petition should be dismissed as untimely and, alternatively, that Petitioner's claims are unexhausted and procedurally barred. (Respondents' Exh. 11) Petitioner's reply reiterates his arguments regarding the merits of his claims, and does not address Respondents' procedural arguments. (docket # 12) As discussed below, the Court finds that the Petition should be dismissed as untimely and, therefore, declines to reach Respondents' alternative argument or the merits of Petitioner's claims.

**II. Timeliness under the AEDPA**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996 established a one-year statute of limitations for filing a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).

**A. Commencement of Limitations Period**

The AEDPA's one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[3] The petition for post-conviction relief was file-stamped on October 17, 2007. (Respondents' Exh. Q) However, it appears that the post-conviction court was in receipt of it prior to that date, because the court's October 16, 2007 minute entry denying the petition, states that the court reviewed the petition. (Respondents' Exh. R) Additionally, the petition was signed and dated August 6, 2007. (Respondents' Exh. Q at 5)

- 6 -

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or the laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

On the facts of this case, § 2244(d)(1)(A) governs the commencement of the statute of limitations. However, the Court notes that Petitioner challenges his sentences on *Blakely* grounds and may argue that pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004) and 28 U.S.C. § 2244(d)(1)(C), the AEDPA's statute of limitations commences on the "date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(C).

As previously stated, Petitioner's conviction was final on direct review in 2000. *Blakely* was not decided until June 24, 2004. The Supreme Court has not made *Blakely* retroactive to cases that were final on direct review before *Blakely* was decided on June 24, 2004. *Schardt v. Payne*, 414 F.3d 1025, 1038 (9th Cir. 2005) (holding that *Blakely* does not apply retroactively to a conviction that was final before that decision was announced.). Because *Blakely* does not apply retroactively to Petitioner's case, Section 2244(d)(1)(C) does not apply.

The Court, therefore, will apply Section 2244(d)(1)(A) to determine when the statute of limitations commenced. On February 29, 2000, the Arizona Court of Appeals denied Petitioner's direct review. (Respondents' Exh. H) Petitioner did not petition the Arizona Supreme Court for review. Accordingly, his conviction became final on March 30, 2000, 30 days after the Arizona Court of Appeals dismissed his direct appeal. *See* 28 U.S.C. § 2244(d)(1)(a); *Hemmerle v. Schriro*, 495 F.3d 1069, 1072-74 (9th Cir. 2007); Ariz.R.Crim.P.

31.19(a) (establishing 30-day limit for petitioning Arizona Supreme Court to review court of appeals' decision on direct appeal.)

The AEDPA one-year statute of limitations would have commenced on March 31, 2000, but it was immediately tolled because Petitioner had previously filed a notice of post-conviction relief. (Respondents' Exh. K) *See* 28 U.S.C. § 2244(d)(2) (the AEDPA's limitations period is tolled during the time that a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."); *Hemmerle v. Schriro*, 495 F.3d 1069, 1074 (9th Cir. 2007) (stating that "in Arizona, post-conviction 'proceedings begin with the filing of the Notice'. . . . Thus, where notice is filed in conformity with the pertinent Arizona statutory provisions and contains a specific prayer for relief in the form of a request for a new trial, 'it is sufficient to toll the AEDPA statute of limitations.'"). Section 2244(d)(2) provides that the limitations period is tolled while "a properly filed application for State post-conviction or other collateral review . . . is pending." *Id. See also*, *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004) (in Arizona, filing of notice of post-conviction relief in state court tolls statute of limitations.). The state court dismissed the post-conviction proceeding on May 26, 2000. (Respondents' Exh. N) Thus, the AEDPA limitations period commenced on May 27, 2000 and expired 365 days later on May 26, 2001.

More than six years after the AEDPA limitations period expired, on August 13, 2007, Petitioner commenced a second post-conviction action. (Respondents' Exh. O) Because the AEDPA statute of limitations had already run by the time Petitioner commenced his second post-conviction action, statutory tolling will not save his Petition. Once the AEDPA limitations period expires, a subsequently filed petition for post-conviction relief cannot restart the statute of limitations. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001). Section 2244(d)(2) cannot "revive 'the limitation period (i.e. restart the clock to zero); it can only serve to pause a clock that has not yet fully run. Once the limitation period is expired, collateral petitions can no longer serve to avoid a statute of

limitation.'" *Johnson v. Galaza*, No. C 00-0450 CRB (PR), 2001 WL 125312, * 1 (N.D.Ca., Feb. 7, 2001) (quoting *Rashia v. Kuhlman*, 991 F.Supp. 254, 259 (S.D.N.Y. 1998)). *See also*, *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that "section 2244(d) does not permit re-initiation of the limitations period that has ended before the state petition was filed.").

Moreover, the state trial court noted that Petitioner' second notice of post-conviction relief was untimely under Arizona law, and found that Petitioner's claims did not satisfy any exceptions to the time limit for filing a Rule 32 petition. (Respondents' Exh. P) Accordingly, Petitioner's second notice of post-conviction relief was not properly filed and could not have tolled the limitations period even if it had not already expired. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) (stating that "[w]hen a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).")

In summary, the limitations period expired on May 26, 2001. Petitioner's Petition for Writ of Habeas Corpus filed on July 9, 2009, is untimely and the Court need not reach the merits of Petitioner's claims unless he establishes a basis for equitable tolling.

### B. Equitable Tolling

Contrary to Respondents' assertion that equitable tolling no longer exists, the Ninth Circuit recognizes that the § 2244(d) limitations period may be equitably tolled because it is a statute of limitations, not a jurisdictional bar. *Waldron-Ramsey v. Pacholke,* 556 F.3d 1008, 1011 n. 2 (9th Cir. 2009); *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), *overruled, in part, on other grounds by*, *Calderon v. United States Dist. Ct. (Kelly)* 163 F.3d 530, 540 (9th Cir. 1998). Tolling is appropriate when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time." *Id.*; *see also*, *Miranda v. Castro*, 292 F.3d 1063, 1067 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (citations omitted); *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "When external forces, rather than a petitioner's lack of diligence,

account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). The extraordinary circumstances requirement is a "high hurdle," *see Calderon (Beeler)*, 128 F.3d at 1289, and policy considerations counsel against equitable tolling. *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980); *see Shannon v. Newland*, 410 F.3d 1083, 1090 (9th Cir. 2005) (stating that "[e]ach of the cases in which equitable tolling has been applied have involved wrongful conduct, either by state officials or occasionally, by the petitioner's counsel."). A petitioner seeking equitable tolling must establish two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Petitioner must also establish a "causal connection" between the extraordinary circumstances and his failure to file a timely petition. *Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007) (stating that the "prisoner must show that the extraordinary circumstances were the cause of his untimeliness.").

The circumstances in this case do not support a finding that Petitioner pursued his rights diligently. Petitioner never sought appellate review of the denial of his first petition for post-conviction relief. After that proceeding was dismissed, Petitioner waited nearly seven years before commencing a second post-conviction proceeding. The second Rule-32 proceeding was dismissed as untimely. Petitioner then waited nearly two years before filing a federal petition for writ of habeas corpus. This is not a case where Petitioner has been diligently pursuing his rights. *See Guillory v. Roe*, 329 F.3d 1015, 1018 (9th Cir. 2003) (noting that equitable tolling only applies "where 'external forces, rather than a petitioner's lack of diligence account for the failure to file a timely claim.").

Additionally, Petitioner has not described any extraordinary circumstances which prevented him from filing a timely petition for writ of habeas corpus. *Pace*, 544 U.S. at 418. Petitioner's lack of familiarity with the law and lack of legal assistance do not constitute extraordinary circumstances sufficient to toll the limitations period. "[I]t is well established

- 10 -

that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (quoting *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999)). Petitioner's ignorance of the law and indigent status do not distinguish him from the great majority of inmates pursuing habeas corpus relief. Such circumstances are not extraordinary and do not justify tolling the limitations period. "If limited resources, lack of legal knowledge, and the difficulties of prison life were an excuse for not complying with the limitation period, the AEDPA's limitation period would be meaningless since virtually all incarcerated prisoners have these same problems in common." *Bolanos v. Kirkland*, No. 1:06-cv-00808-AWI-TAG HC, 2008 WL 928252, * 4 (E.D.Cal. April 4, 2008). *See also Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (affirming denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include unexhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling); *Marsh*, 223 F.3d at 1220 (holding that delays caused by prison inmate law clerk and law library closures do not justify equitable tolling). Likewise, Petitioner's lack of legal assistance is not an extraordinary circumstance. *See Ballesteros v. Schriro*, CV-06-675-EHC (MEA), 2007 WL 666927, * 5 (D.Ariz., February 26, 2007) (noting that a petitioner's *pro se* status, ignorance of the law, lack of representation during the applicable filing period, and temporary incapacity do not constitute extraordinary circumstances) (citing *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999)).

Petitioner has failed to present any circumstance that would justify equitably tolling the AEDPA statute of limitations. Accordingly, his § 2254 Petition should be denied as untimely.

### III. Conclusion

In summary, because the Petition is untimely and Petitioner has not established any basis for tolling the AEDPA limitations period, the Petition should be denied. In view of

this finding, the Court declines to consider Respondents' alternative argument that federal review of Petitioner's claims is procedurally barred or to consider the merits of Petitioner's claims..

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (docket # 1) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have seven days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 20th day of January, 2010.

Lawrence O. Anderson
United States Magistrate Judge